# DISSENTING OPINION

No. 04-11-00193-CV

**THE LYND COMPANY**,
Appellant

v.

**RSUI INDEMNITY COMPANY**,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-20466
Honorable Karen H. Pozza, Judge Presiding

### DISSENTING OPINION TO DENIAL OF APPELLEE'S MOTION FOR EN BANC RECONSIDERATION

Sitting en banc:      Catherine Stone, Chief Justice
                      Karen Angelini, Justice
                      Sandee Bryan Marion, Justice
                      Phylis J. Speedlin, Justice
                      Rebecca Simmons, Justice
                      Steven C. Hilbig, Justice
                      Marialyn Barnard, Justice

Concurring opinion by:     Marialyn Barnard, Justice
Dissenting opinion by:     Rebecca Simmons, Justice, joined by Phylis J. Speedlin, Justice and
                            Steven C. Hilbig, Justice

Delivered and Filed: December 28, 2012

This case involves the interpretation of an insurance policy that provided excess property coverage for a number of apartment complexes that were damaged by Hurricane Rita. Because I disagree with the majority's interpretation and believe that the policy is a "scheduled" insurance policy, I respectfully dissent.

This court must "avoid strictly construing [a contract's] language if it would lead to absurd results." *See Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011) (per curiam); *accord Lane v. Travelers Indem. Co.*, 391 S.W.2d 399, 402 (Tex. 1965) (rejecting a

contract construction that "could lead to absurd results"). The error in the majority's conclusion can be traced to its avoidance of the contract construction question that must be resolved: Is the policy at issue a blanket or scheduled policy? By ignoring this crucial question, the court fails to address both the absurd results that come from treating the policy as a blanket policy and the overwhelming majority of case law that shows this policy is a scheduled policy. *See, e.g.*, *RSUI Indem. Co. v. Benderson Dev. Co.*, No. 2:09-cv-88-FtM-29DNF, 2011 WL 32318, at *5 (M.D. Fla. Jan. 5, 2011); *Axis Specialty Ins. Corp. v. Simborg Dev., Inc.*, 2009 WL 765298, at *4–5 (N.D. Ill. Mar. 20, 2009); *Gulfport-Brittany, LLC v. RSUI Indem. Co.*, 2008 WL 4951468, at *3– 4 (S.D. Miss. Nov. 7, 2008), *aff'd*, 339 F. App'x 413 (5th Cir. Jul. 30, 2009) (per curiam); *Reliance Nat'l Indem. Co. v. Lexington Ins. Co.*, No. 01 C 3369, 2002 WL 31409576, at *8 (N.D. Ill. Oct. 23, 2002); *Fair Grounds Corp. v. Travelers Indem. Co. of Ill.*, 742 So. 2d 1069, 1071 (La. Ct. App. 1999); *Anderson Mattress Co. v. First State Ins. Co.*, 617 N.E.2d 932, 935 (Ind. Ct. App. 1993). Clearly the parties did not ignore this question because the policy provides the answer: "[T]he premium for this policy is based upon the Statement of Values on file with this Company or attached to this policy . . . ." Lynd paid its premium based on the scheduled property values, not on blanket coverage for all property.

The majority opinion uses the term "occurrence" to turn this scheduled policy into a blanket policy thereby ignoring the intent of the parties expressed in the policy. Viewed as a scheduled policy, the policy's plain language is logical. In the event of an occurrence, the property owner recovers the lesser of (a) the actual adjusted amount of the loss; (b) 115% of the stated value of the scheduled property; or (c) the limit of liability if the cumulative loss for the occurrence reaches policy limits. The use of the word "or" does not mean that RSUI has to select one method and apply it to all of the losses. Rather, it means that, for each scheduled item,

RSUI pays either (a) the actual adjusted amount or (b) 115% of the stated value, with the total payment for all losses to scheduled items capped by the policy limit.

The court's flawed contract construction is clearly revealed by the absurd result not only in this case, but also by the promise of more such results in future cases. Here, Lynd paid premiums based on items whose values were required to be listed. The liability limit for each of these scheduled items was 115% of the stated value. Under the court's flawed interpretation, because two properties were undervalued, RSUI will pay more than 115% of the stated value for the damaged properties. Furthermore, in future cases, if some properties are minimally damaged but others are damaged in excess of 115% of their stated value, the insurer will have to pay 115% of the stated value of scheduled items that were minimally damaged. This absurd result can be avoided if the essential question is addressed: Is the policy at issue a blanket or a scheduled policy? The overwhelming majority of case law shows that this policy is a scheduled policy, and when viewed as such, the result is logical. The insured receives either the actual adjusted amount of the loss to his scheduled property or 115% of the stated value for the scheduled property if the damage exceeded the stated value. Thus, the insured receives what he bargained for—and more importantly—what he paid for.

Because the court rejects the proper policy interpretation in favor of a construction that produces an absurd result in this case, and will produce like results in the future, I respectfully dissent.

Rebecca Simmons, Justice