**Reversed and Remanded and Opinion filed May 15, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00011-CV

---

### WILLIAM BLACK, Appellant

### V.

### DIAMOND OFFSHORE DRILLING, INC., DIAMOND OFFSHORE DRILLING LIMITED, AND DIAMOND OFFSHORE GENERAL COMPANY, Appellees

---

**On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2015-74728**

---

## O P I N I O N

Appellant William Black appeals the trial court's dismissal of his personal-injury claims against appellees Diamond Offshore Drilling, Inc., Diamond Offshore Drilling Limited, and Diamond Offshore Company, claiming the trial court erred in determining that non-signatory appellees could enforce the forum-selection clause contained in his employment contract. We reverse and remand.

## I.  BACKGROUND

Appellant, a citizen of the United Kingdom, signed a contract of employment ("Agreement"),[1] effective January 29, 2008, with Diamond Offshore Drilling (Bermuda) Limited ("Diamond Bermuda").[2]  Diamond Bermuda is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda.  The employment contract ("Agreement") between appellant and Diamond Bermuda contains a forum-selection clause wherein both parties consent to the jurisdiction of the courts of Bermuda to hear and determine any claims, disputes, suits (whether for personal injury or any other kind) brought by one party to the agreement against the other pertaining to the contract or any matter related to or arising out of the contract.  The forum-selection clause within the employment agreement provides as follows:

> 18.    CONSENT TO JURISDICTION, AGENT AND METHOD FOR SERVICE OF PROCESS
>
> 18.1   As part of the consideration for value received to this Agreement and as a term of this Agreement, and regardless of the location of any present or future principal place of business of either party (and/or their successors or assigns, dependants [sic], executors or administrators), each party (and/or their successors or assigns, dependants [sic], executors or administrators) hereby irrevocably consents in advance to the exclusive jurisdiction of the courts of Bermuda, to hear and determine any claims, disputes, suits, actions or proceedings (whether for personal injury compensation or damages of any kind, whether brought by the Employee, or by the Employee's dependants [sic], executors, or administrators) (hereinafter referred to as "Legal Action")

---

[1] The Agreement is styled as Diamond Offshore Drilling (Bermuda) Limited Terms and Conditions of International Employment, and defines employee as William Wilson Black and employer as Diamond Offshore Drilling (Bermuda) Limited.

[2] In appellant's brief, appellant contends that Diamond Bermuda "as party to the Employment Agreement, is the sole Appellee with the right to invoke and enforce the forum-selection clause contained therein."  Thus, appellant asserts he only appeals the trial court's order dismissing appellant's claims against the non-signatory defendants.

2

brought against such party by the other party and pertaining to this Agreement or to any matter relating to or arising out of this Agreement and further agrees that the courts of Bermuda shall be an appropriate forum for such action.

\* \* \*

18.4 Each party (and/or their successors or assigns, dependants [sic], executors or administrators) hereby irrevocably waives any objection that it may now or hereafter have to venue in the courts of Bermuda, including without limitation any claim, based upon improper venue or Forum Non Conveniens. The Employee (and/or his successors or assigns, dependants [sic], executors or administrators) agrees not to seek, and hereby waives, any right to, compensation from the courts of any other state, nation or jurisdiction or to seek any review of the judgment of any of the courts of Bermuda by any court of any other state, nation, or jurisdiction.

On January 2, 2015, appellant was working as an assistant mechanic aboard the *Ocean Valiant* while the vessel was stationed in a shipyard in Spain for repairs. The vessel was owned by appellee Diamond Rig Investments, Limited, a United Kingdom company based in London, England. While working on the vessel, appellant sustained severe chemical burns on his buttocks when he sat on a chemical container marked corrosive.

On June 8, 2016, appellant filed an amended petition in Harris County, Texas, with claims arising under theories of negligence and unseaworthiness in accordance with the Jones Act and general duties imposed by common law (general maritime law) against appellees Diamond Offshore Drilling, Inc., Diamond Offshore Drilling, Limited, and Diamond Offshore General Co. Appellees Diamond Offshore Drilling, Inc. and Diamond Offshore General maintain their principal place of business in Houston, Texas.

Appellant later amended his petition, adding appellee Diamond Rig Investments Limited (*i.e.*, the vessel owner and one of the non-signatory defendants)

3

and appellee Diamond Bermuda. In his amended petition, appellant asserts that all appellees were his Jones Act employers at the time of his accident and that all appellees are liable as employers for Jones Act negligence and maintenance and cure payments under general maritime law.

On August 1, 2016, appellees Diamond Offshore Drilling, Inc., Diamond Offshore Drilling, Limited, Diamond Offshore General Company, and Diamond Rig Investments Limited filed a motion to dismiss based on the application of forum-selection clause within the Agreement, or, in the alternative, based on forum *non conveniens*.[3] In their motion, appellees argued that, as non-signatories, they can enforce the forum-selection clause in the Agreement between Diamond Bermuda and appellant because they are "closely enough related to the signatory and the transaction." In a supplemental memorandum, appellees contended that appellant's original and first amended original petitions have virtually identical allegations of negligence and fault against the sole signatory Diamond Bermuda, and the non-signatory defendants participated in substantially-interdependent and concerted-misconduct. Appellees argued this forms an equitable basis for the non-signatory defendants to enforce the forum-selection clause in appellant's employment contract. Appellees further maintained that appellant's original and first amended original petitions identified both the signatory defendant and all non-signatory defendants as his employer, asserting identical employment related claims for negligence under the Jones Act and for maintenance and cure under the general maritime law. Appellees contended that appellant raised indistinguishable factual allegations against all appellees and established a "close-relationship" among appellees, which according to appellees, is an indispensable element of "intertwined-

---

[3] Diamond Bermuda made an appearance and filed its answer after the non-signatory defendants filed their motion to dismiss.

claims" estoppel.

In his response and supplemental briefing, appellant argued that a plain reading of the employment agreement limits the scope of the forum-selection clause only to the parties of the employment agreement—appellant and Diamond Bermuda. Appellant also maintained that the non-signatory defendants could not enforce the forum–selection clause under theories of equitable estoppel because neither "substantially-interdependent and concerted-misconduct" nor "closely-related" and "intertwined-claims" are theories of equitable estoppel recognized under Texas law.

On December 5, 2016, the trial court granted the non-signatory defendants' motion to dismiss based on the contractual forum-selection clause, but was silent as to which of the theories argued by the non-signatories was the basis for its dismissal. The trial court expressly found that it did not reach the arguments based on forum *non conveniens*. Appellant timely filed this appeal.

## II. ANALYSIS

Appellant asserts in a single issue that the trial court abused its discretion in determining that the non-signatory defendants could enforce the forum-selection clause contained in appellant's employment contract. Appellant argues that the non-signatory defendants cannot enforce the Agreement's forum-selection clause under the plain language of the Agreement or under any recognized theory of equitable estoppel. Further, appellant contends that the non-signatory defendants failed to demonstrate they were "transactional participants" and, thus, cannot use the transactional participant doctrine to enforce the forum-selection clause.

## A. Standard of review and general principles

We review a motion to dismiss predicated on a forum-selection clause for an abuse of discretion. *In re AIU Ins. Co.*, 148 S.W.3d 109, 114–15 (Tex. 2004) (orig. proceeding); *Deep Water Slender Wells, Ltd. v. Shell Int'l Expl. & Prod. Co.*, 234 S.W.3d 679, 687 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). When the dismissal order is based on the interpretation of a contract containing a forum-selection clause, as here, we review the trial court's interpretation of the contract *de novo*. *Id.* (citing *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 610 (Tex. App.—Houston [1st Dist.] 2005, no pet.)). Courts interpret unambiguous forum-selection clauses according to their plain language under contract interpretation principles. *Alattar v. Kay Holdings, Inc.*, 485 S.W.3d 113, 119 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

When deciding whether to enforce a forum-selection clause, a court must determine whether the claims fall within the scope of the clause. *Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 687. The Texas Supreme Court has held that "a reviewing court should engage in a 'common-sense examination of the claims and the forum-selection clause to determine if the clause covers the claims.' " *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 884 (Tex. 2010) (orig. proceeding) (quoting *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex. 2009) (orig. proceeding)). We make this determination based on "the language of the clause and the nature of the claims that are allegedly subject to the clause." *Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 688 (citation omitted). In examining the claims asserted in the lawsuit, a court does not "'slavish[ly] adhere[ ] to a contract/tort distinction.' " *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d at 677 (citations omitted). Instead, the court must be wary of "artful pleading" that "would allow a litigant to avoid a forum-selection clause." *Id.*; *see In re Lisa Laser USA, Inc.*, 310 S.W.3d at 884.

6

The Texas Supreme Court has "borrowed from its arbitration jurisprudence" for guidance on forum-selection clauses because an arbitration clause is "another type of forum-selection clause." *In re Lisa Laser USA, Inc.*, 310 S.W.3d at 884; *In re AIU Ins. Co.*, 148 S.W.3d at 115; *see, e.g.*, *Loya v. Loya*, 507 S.W.3d 871, 877 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *In re Longoria*, 470 S.W.3d 616, 630 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding); *Smith v. Kenda Capital, LLC*, 451 S.W.3d 453, 457 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re Boehme*, 256 S.W.3d 878, 884 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). "[T]here is no meaningful distinction between a non-arbitration forum-selection clause and an arbitration clause." *Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 694 (citing *In re AIU Ins. Co.*, 148 S.W.3d at 115–16).

As a general rule, an arbitration clause or forum selection clause cannot be invoked by a nonparty to the contract. *See G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 524 (Tex. 2015); *Garg v. Pham*, 485 S.W.3d 91, 105 (Tex. App.—Houston [14th Dist.] 2015, no pet.). In some circumstances, however, a non-signatory may be permitted to enforce an arbitration agreement or forum selection clause. *See id.*; *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (listing six recognized theories that may bind non-signatories: "(1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary"). "Ultimately, we must determine the intent of the parties as expressed in the terms of the agreement by applying ordinary principles of state contract law to determine whether non-signatory may enforce the forum selection clause. *See id.* (citing *G.T. Leach Builders, LLC*, 458 S.W.3d at 524).

**B.      Non-signatory defendants cannot enforce forum-selection clause**

       **1.      Agreement limits its application to enforcement by parties**

In this case, the scope of the forum-selection clause in the Agreement, as quoted *supra*, is specifically limited to enforcement by the parties to the contract, and only covers disputes brought by one party (appellant) against the other party (Diamond Bermuda). There are no other parties to the Agreement. Moreover, the forum-selection clause limits its application to "any claims, disputes, suits, actions or proceedings" brought between appellant and Diamond Bermuda. The only non-signatories permitted to enforce the forum-selection clause are expressly designated in the Agreement as "the successors or assigns, dependants [sic], executors or administrators" of the parties—appellant Black and Diamond Bermuda, respectively. Appellees do not argue they are "successors or assigns, dependants [sic], executors or administrators" of the parties. The non-signatory defendants are not parties to or otherwise within the scope of the Agreement. *See, e.g., In re Estate of Guerrero*, 465 S.W.3d 693, 701 (Tex. App.—Houston [14th Dist.] 2015, pet. filed) (citing *Van Zanten v. Energy Transfer Partners, L.P.*, 320 S.W.3d 845, 847 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Generally, only signatories to an arbitration agreement are bound by the agreement.")).

To the extent the trial court relied on the language in the Agreement to allow the non-signatories to enforce the forum-selection clause, the trial court abused its discretion.

### 2. Equitable estoppel theories unavailing to non-signatory defendants

Appellees maintain they can enforce the forum-selection clause under estoppel principles. Equitable estoppel theories allowing non-signatories to enforce arbitration agreements may also apply to forum-selection clauses. *Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 693–94. "A person who has agreed to resolve disputes with one party in a particular forum may be required in some circumstances to resolve related disputes with other parties in the same forum." *Smith*, 451 S.W.3d

8

at 458.

### a. "Substantially-interdependent and concerted-misconduct"

The non-signatory defendants seek the benefits of the contractual forum-selection clause based on the "substantially-interdependent and concerted-misconduct" doctrine. Under this equitable-estoppel doctrine, non-signatories may enforce a forum-selection clause "when a signatory to the contract containing the forum-selection clause raises allegations of substantially[-]interdependent and concerted[-]misconduct by both non-signatories and one or more signatories to the contract." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 446 & n. 76 (Tex. 2017); *Deep Water Slender Wells, Ltd.*, 234 S.W.3d at 694. The Texas Supreme Court, however, has declined to adopt the concerted-misconduct doctrine. *Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 446 & nn. 77, 78 (citing *G.T. Leach Builders, LLC,* 458 S.W.3d at 529 n. 23; *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191–92 (Tex. 2007)); *see also Brewer & Pritchard PC v. AMKO Resources Int'l, LLC*, No. 14-13-00113-CV, 2014 WL 3512836, at *11 (Tex. App.—Houston [14th Dist.] July 15, 2014, no pet.) ("Texas courts have not adopted the theory of concerted-misconduct estoppel."). Therefore, we reject the non-signatories' concerted-misconduct argument and will confine our analysis to direct-benefits estoppel—the only form of equitable estoppel recognized in Texas.

To the extent the trial court relied on concerted-misconduct estoppel to enforce the forum-selection clause, the trial court abused its discretion.

9

### b. "Intertwined-claims" estoppel

The non-signatory defendants also seek to enforce the contractual forum-selection clause based on the theory of "intertwined-claims" estoppel. Intertwined-claims estoppel involves compelling enforcement of a forum selection clause "when a nonsignatory defendant has a close relationship with one of the signatories and the claims are intimately founded in and intertwined with the underlying contract obligations." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 193–94 (Tex. 2007) (orig. proceeding) (internal quotations omitted). Courts have employed this exception to disregard "strategic pleading" that seeks to avoid a forum-selection clause. *See id.* at 194. "[A]llowing litigation to proceed that is in substance against a signatory though in form against a nonsignatory would allow indirectly what cannot be done directly." *See id.* at 193–94.

The Texas Supreme Court has not expressly adopted intertwined-claims estoppel as a valid theory of estoppel. In *Merrill Lynch*, the Supreme Court acknowledged that other federal circuits have estopped signatory plaintiffs from avoiding enforcement of a forum-selection clause with non-signatories using an "intertwined-claims" test. *See* 235 S.W.3d at 193. The Court, however, referenced that test for the purpose of comparing it with concerted-misconduct estoppel, which the court went on to reject. *Id.* at 193–95. The Court distinguished the two by explaining that concerted-misconduct estoppel lacks the limiting "close relationship" component of intertwined-claims estoppel. *Id.* at 194.

Although we have mentioned *Merrill Lynch*'s discussion of intertwined-claims estoppel, we have not applied intertwined-claims estoppel as an independent theory. *See Cotton Commercial USA v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 105–07 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In *Cotton Commercial*, we ordered enforcement of an arbitration clause based upon the terms of the

arbitration agreement and the theory of direct-benefits estoppel (discussed below).[4] As we explained, "any right the School District has to recover damages . . . depends on" an agreement that contains an arbitration clause, and "[i]t would be contrary to Texas policy favoring arbitration and against artful pleading to avoid arbitration to allow the School District to avoid its agreement to arbitrate claims or to piecemeal such claims in two forums simply because its contracting counterpart has merged with another company." *Id*. at 106–07.

Here, we need not decide the viability of an independent theory of intertwined-claims estoppel because it would be inapplicable to this case. Appellant has not relied upon strategic or artful pleading and his claims do not arise from the underlying employment agreement. Rather, the basis for appellant's claims is statutory law (the Jones Act) and federal common law (general maritime law). Because appellant's claims are not rooted in the underlying employment agreement that contains an arbitration clause, any argument premised on "intertwined-claims" estoppel would fail.

To the extent the trial court relied on the intertwined-claims estoppel theory to enforce the forum-selection clause, the trial court abused its discretion.

---

[4] *Cotton Commercial* also examined the supreme court's decision in *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302 (Tex. 2006). But *Meyer* applied a theory of direct-benefits estoppel, not an independent theory of intertwined-claims estoppel. *Id*. at 305, 308 (stating and applying principle of direct-benefits estoppel that a claimant cannot seek to benefit from the agreement but avoid its arbitration clause); *see also Cooper Indus., LLC v. Pepsi-Cola Metropolitan Bottling Co.*, 475 S.W.3d 436, 442–43 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (applying *Meyer*'s test of direct-benefits estoppel). As we said in *Garg v. Pham*, "[f]or a nonsignatory to be able to enforce an arbitration clause based on equitable estoppel, the claim must not only relate to the agreement containing the arbitration clause, but the claimant must also seek to derive a direct benefit . . . from that agreement." 485 S.W.3d 91, 105 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

### c. "Direct-benefits" estoppel is inapplicable to this case

Direct-benefits estoppel is an equitable estoppel theory recognized by Texas courts that allows non-signatories to enforce arbitration and forum-selection clauses. *See Glassell Prod. Co., Inc. v. Jared Res., Ltd.*, 422 S.W.3d 68, 82 (Tex. App.—Texarkana 2014, no pet.) (citing *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 195 (Tex. 2007) (orig. proceeding)); *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding). Under the theory of direct-benefits estoppel, a non-signatory may enforce a forum-selection clause in a contract that contains other terms on which the signatory plaintiff must rely to prosecute its claims. *Smith*, 451 S.W.3d at 458; *In re Cornerstone Healthcare Holding Grp., Inc.*, 348 S.W.3d 538, 544–45 (Tex. App.—Dallas 2011, orig. proceeding). Direct-benefits estoppel applies when a signatory's claim against a non-signatory references or presumes the existence of the written agreement containing the clause. *Smith*, 451 S.W.3d at 458.

The Texas Supreme Court has explained that "whether a claim seeks a direct benefit from a contract" depends on whether "liability arises solely from the contract or must be determined by reference to it" or whether "liability arises from general obligations imposed by law." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005) (orig. proceeding). A claim does not seek a direct benefit from contract if liability under the claim "arises from general obligations imposed by state law, statutes, torts, and other common law duties, or federal law." *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 184 n. 2 (Tex. 2009) (orig. proceeding).

As applied to this case, under direct-benefits estoppel, the non-signatory defendants could compel enforcement of the forum-selection clause *only* if appellant sought a benefit that stems directly from the Agreement. *See G.T. Leach Builders, LLC*, 458 S.W.3d at 527–28. Here, the direct-benefits estoppel theory is inapplicable

because appellant's claims do not arise from the Agreement—*i.e.*, there are no terms within the Agreement for which appellant must rely upon in order to pursue his Jones Act and general maritime law claims. Appellant's claims under the Jones Act is a statutory claim available to seaman and his general maritime claims involves the common law.

To the extent the trial court relied on direct-benefits estoppel to enforce the forum-selection clause, the trial court abused its discretion because the theory is inapplicable to this case.

### 3. Transaction-participant doctrine precluded by the Agreement

Some intermediate Texas appellate courts and federal courts have held that transaction participants may enforce a forum-selection clause even if they are not actual signatories to the contract. *See Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 444. Under this theory, non-signatories may enforce forum-selection clauses when they are "closely related to the contractual relationship." *See id*. "In such circumstances, enforcement is permitted if the relationship between a non-signatory and a signatory to the contract is close enough that the non-signatory's enforcement of the forum selection clause would be 'foreseeable' to the opposing party." *Id*. Courts that have supported enforcement in such circumstances have reasoned that signatories have already "agreed to litigate disputes relating to the contract in the chosen forum such that enforcing the provision comports with the legitimate expectations of the parties, [as] manifested in their freely negotiated agreement." *Id*. at 444–45 (internal quotations omitted).

The Texas Supreme Court, however, has not addressed whether a transaction participant could enforce a forum-selection clause, or under what circumstances. *See Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 445. In *Pinto Tech. Ventures, L.P.*, the agreement at issue stated:

13

> This Agreement ... shall inure to the benefit of and be binding upon, the successors, permitted assigns, legatees, distributees, legal representatives and heirs of each party and is not intended to confer upon any person, other than the parties and their permitted successors and assigns, any rights or remedies hereunder.

*Id.* The court declined to decide whether a transaction participant could enforce a forum-selection clause, concluding the express terms of the agreement preclude its application in this case. *Id.* at 445. The court observed that who is actually bound to dispute resolution in the contractually specified forum is a function of the intent of the parties as expressed in the terms of the agreement. *Id.* Because the parties were not silent on the matter with respect to their intent and, in fact, disavowed any intent to extend contractual rights and remedies to anyone other than the parties and their permitted successors and assignee, the court held that the non-parties to the agreement could not rely on the transaction participant doctrine to enforce the forum-selection clause. *Id.* at 446.

In this case, by its express terms, the Agreement's forum-selection clause is limited to each party and/or their successors or assigns, dependents, executors or administrators. Appellees neither have argued nor have demonstrated that they are "parties" to the agreement or otherwise explained how they fall within the term "transaction participants."[5] As such, enforcement of the forum-selection clause by appellees against appellant would not have been reasonably foreseeable (as contemplated by the transaction participant theory) and is impermissible. *See Pinto Tech. Ventures, L.P.*, 526 S.W.3d at 445–46. Appellant's issue is sustained.

---

[5] In their motion to dismiss, the non-signatory defendants merely state in a conclusory sentence that the "trial court must apply a valid forum-selection clause to all transaction participants; to conclude otherwise would enable a party to bypass a valid forum-selection clause by naming in its petition a closely related party who was not a party to the contract."

In sum, the trial court abused its discretion in granting the non-signatory defendants' motion to dismiss.

### III.   CONCLUSION

Having sustained appellant's issue, we reverse the trial court's judgment and remand the case to the trial court for further proceedings.


/s/     John Donovan
       Justice


Panel consists of Justices Jamison, Busby, and Donovan.